**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PANDORA JEWELRY, LLC, <br><br> Movant, <br><br> v. <br><br> BLUE TIME, INC. and SOLAR TIME, INC., <br><br> Respondents. | Case No. 1:22-mc-00238 <br><br> *Related to Civil Action No.* <br> *1:21-cv-02973-SAG (D. Md.)* <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS TO BLUE TIME, INC. AND SOLAR TIME, INC.** |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... iii

I.   INTRODUCTION .........................................................................................................1

II.  STATEMENT OF FACTS .............................................................................................2

     A.   Factual Background .............................................................................................2

     B.   Pandora Discovers Unauthorized Sales of its Products on the Walmart
          Marketplace..........................................................................................................3

     C.   Procedural Background of Underlying John Doe Lawsuit ..................................4

III. LAW AND ARGUMENT ..............................................................................................6

     A.   Standard of Review..............................................................................................6

     B.   The Discovery Sought Is Not Unduly Burdensome or Harmful to
          Respondents .........................................................................................................7

     C.   The Discovery Sought Is Not Highly Confidential..............................................11

     D.   The Discovery Sought Is Relevant and Necessary to the John Doe Lawsuit ........13

IV.  CONCLUSION...............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott Labs v. Adelphia Supply United States*,
   No. 15-CV-6002, 2019 WL 5696148 (E.D.N.Y. Sep. 30, 2019) ................................................ 5

*Advance Magazine Publrs., Inc. v. Tinsley*,
   No. 3:18-cv-13575-RHC-SDD, 2019 WL 1285089
   (E.D. Mich. March 20, 2019) ...................................................................................................... 10

*Am. Home Assur. Co. v. Merck & Co.*,
   No. 03 Civ. 3850 (VM) (JCF), 2004 WL 2222148 (S.D.N.Y. Oct. 4, 2004) ........................... 7

*Arista Records LLC v. Doe*,
   604 F.3d 110 (2d Cir. 2009) ........................................................................................................ 13

*Audi AG v. D'Amato*,
   469 F.3d 534 (6th Cir. 2006) ...................................................................................................... 10

*Bare Escentuals Beauty, Inc. v. Costco Wholesale Corp.*,
   No. 07CV90, 2007 WL 4357672 (S.D. Cal. Dec. 11, 2007) ................................................. 7, 12

*Corporate Express Office Prods. v. Gamache (In re Wagar)*,
   No. 1:06-MC-127 (LEK/RFT), 2006 WL 3699544 (N.D.N.Y. Dec. 13, 2006) ......................... 8

*Coty Inc. v. C Lenu, Inc.*,
   No. 10-21812-CIV-HUCK/O'SULLIVAN,
   2010 WL 5392887 (S.D. Fla. Dec. 22, 2010) ..................................................................... passim

*Delta Air Lines, Inc. v. Lightstone Grp., LLC*,
   No. 21-MC-374 (RA) (OTW),
   2021 WL 2117247 (S.D.N.Y. May 24, 2021) ........................................................................ 6, 8

*Generation Brands, LLC v. Décor Selections, LLC*,
   No. 19 C 6185, 2020 WL 6118558 (N.D. Ill. Oct. 16, 2020) ............................................ 11, 12

*Joint Stock Co. Channel One Russ. Worldwide v. Infomire LLC*,
   No. 16-CV-1318 (GBD) (BCM), 2018 WL 6712769 (S.D.N.Y. Nov. 30, 2018) ................. 6, 8

*LaFace Records, LLC v. Does 1-5*,
   No. 07-187, 2007 WL 2867351 (W.D. Mich. Sept. 27, 2007) ................................................. 13

*Malibu Media, LLC v. Doe*,
   No. 14-60259-CIV-ROSENBAUM,
   2014 WL 1340779 (S.D. Fla. Apr. 4, 2014) ............................................................................. 13

*MetroPCS v. Devor*,
 215 F. Supp. 3d 626 (N.D. Ill. 2016) .................................................................................. 10

*Minnesota Mining and Mfg. Co. v. Graham-Field, Inc.*,
 No. 96 Civ. 3839, 1997 WL 83292 (S.D.N.Y. Feb. 26, 1997) ................................................. 14

*Pandora Jewelry, LLC v. John Doe 1-10*,
 No. 1:21-cv-02973-SAG (D. Md. Nov. 19, 2021) ................................................................... 1

*Pearson Educ., Inc. v. Labos*,
 No. 19 Civ. 487 (JPC), 2021 WL 4507530 (S.D.N.Y. Sept. 30, 2021) .................................... 10

*Pendleton Woolen Mills v. Kraff's Men's Wear Co.*,
 No. 3:14-CV-628-PK, 2014 WL 7777762 (D. Or. Nov. 21, 2014) ......................................... 12

*Roche Diagnostics Corp. v. Amexpo Int'l, LLC*,
 No. 19-61469-CIV-RUIZ/SELTZER, 2019 WL 11623935
 (S.D. Fla. Aug. 20, 2019) ............................................................................... 9, 10, 11, 13

*Skullcandy, Inc. v. Filter USA, Inc.*,
 No. 2:18-cv-00748-DAK, 2019 WL 2568010 (D. Utah June 21, 2019) ................................... 5

*Taylor Precision Prods. v. Larimer Grp., Inc.*,
 No. 15-CV-4428 (ALC) (KNF), 2017 WL 10221320 (S.D.N.Y. Feb. 27, 2017) ...................... 8

*United States CFTC v. Parnon Energy, Inc.*,
 593 Fed. Appx. 32 (2d Cir. 2014) .......................................................................................... 6

*Zino Davidoff SA v. CVS Corp.*,
 571 F.3d 238 (2d Cir. 2009) ................................................................................................... 5

## **OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ............................................................................................................................ 6

Fed. R. Civ. P. 26(b)(1) .................................................................................................................. 6

Fed. R. Civ. P. 26(b)(2)(C) ............................................................................................................ 7

Fed. R. Civ. P. 45 ................................................................................................................. 6, 7, 8

Fed. R. Civ. P. 45(d)(3)(B)(i) ........................................................................................................ 7

**I.      INTRODUCTION**

Movant Pandora Jewelry, LLC ("Pandora") is one of the most recognized jewelry brands in the world. To protect the quality of its products, the satisfaction of its consumers, and the value of its trademarks, Pandora has contracts with its authorized sellers that require them to follow robust quality control and customer service requirements and forbid them from selling Pandora products to unauthorized resellers, who do not follow these same requirements. When Pandora's authorized sellers sell products to unauthorized resellers, they are in blatant breach of their contracts and Pandora is able to obtain legal redress only by suing the authorized sellers for breach of contract.

Respondents Blue Time, Inc. ("Blue Time") and Solar Time, Inc. ("Solar Time") (collectively, "Respondents") are <u>unauthorized</u> resellers of Pandora products who are profiting off of <u>authorized</u> sellers' breaches of contract. Respondents purchase Pandora products from Pandora's authorized sellers and then resell those products to others, including Walmart Inc. ("Walmart"). Walmart then resells the Pandora products to end-user consumers through its online marketplace, www.walmart.com ("Walmart Marketplace"). In the process, Pandora loses control of its ability to ensure the quality of its products. To address Walmart's sales, Pandora filed a lawsuit in Maryland for breach of contract against John Doe defendants, who are the unknown authorized sellers breaching the contracts. *Pandora Jewelry, LLC v. John Doe 1-10*, No. 1:21-cv-02973-SAG (D. Md. Nov. 19, 2021). Pandora subpoenaed Walmart, which identified Respondents as its suppliers of Pandora products, and then subpoenaed Respondents for information about their suppliers, who Pandora believes are the John Doe authorized sellers. Respondents categorically objected, refused to comply with the subpoenas, and rejected Pandora's attempts to reach an amicable resolution. Respondents claim that the subpoenas are pretextual, the suppliers' identities

and related documentation are confidential, and disclosure would be harmful because it would permit Pandora to cut off Respondents' supply of unauthorized Pandora product, undercutting Respondents' profits.

Respondents' objections are meritless. Courts have found that retailers are well within their rights to enforce their contracts, including by engaging in discovery to ascertain the identity of a supplier of unauthorized goods. Respondents' speculative assertion of harm is no more than a fear that they will no longer be able to benefit from breaching authorized sellers and, in any event, is contrary to law permitting brands like Pandora to trace the source of unauthorized sales of its products. Respondents' contention that the subpoenas are pretextual attempts to cut off Respondents' sources is also contradicted by numerous allegations in the John Doe complaint that Pandora is seeking to enforce valid contracts with its authorized sellers.

Crucially, the only way Pandora can pursue its John Doe action is through enforcement of its subpoenas so it can identify the John Doe defendants and pursue its legitimate breach of contract claims against them. This information is uniquely in Respondents' possession, and without it, Pandora cannot enforce its contracts with the breaching John Doe defendants.

## II. STATEMENT OF FACTS

### A. Factual Background

Brand protection is crucial to Pandora's business and Pandora engages in extensive brand protection efforts. *See* Declaration of Martha Brewer Motley, Esq. in Support of Motion to Compel Compliance with Subpoenas to Blue Time, Inc. and Solar Time, Inc. filed herewith ("Motley Decl."), at ¶ 2, Ex. 1 (Complaint) ¶ 9. As part of these efforts, Pandora sells its products only through its own website and stores, and through various franchisees and retailers ("Pandora Dealers") who all sign confidential agreements with Pandora ("Pandora Contracts"). *Id.*, Ex. 1

¶ 10. The Pandora Contracts require Pandora Dealers to abide by certain requirements around quality control, branding, and customer service. *Id.*, Ex. 1 ¶ 11. Furthermore, the Pandora Contracts prohibit Pandora Dealers from selling Pandora products to resellers who have not agreed to the Pandora Contracts ("Unauthorized Resellers"), a practice known as "product diversion." *Id.*, Ex. 1 ¶¶ 10, 13. These terms of the Pandora Contracts are binding on Pandora Dealers, who agree to follow the terms in consideration for the right to buy and resell Pandora products in the approved manner. *Id.*, Ex. 1 ¶¶ 10, 14-17. As a result, Pandora Dealers breach their Pandora Contracts when they sell Pandora products to Unauthorized Resellers. *Id.*, Ex. 1 ¶¶ 17, 24. Respondents do not dispute the existence or terms of the Pandora Contracts, and both are clearly alleged in Pandora's complaint in the John Doe Lawsuit. *See generally id.* at ¶¶ 2, 9, Exs. 1, 5.

### B. Pandora Discovers Unauthorized Sales of its Products on the Walmart Marketplace

Through its brand protection enforcement efforts, Pandora discovered that Walmart was selling Pandora products through the Walmart Marketplace. Motley Decl. at ¶ 2, Ex. 1 ¶ 19. Walmart is <u>not</u> an Authorized Reseller, has not agreed to the Pandora Contracts, and has no relationship with Pandora. *Id.*, Ex. 1 ¶¶ 20-21. Therefore, Walmart was necessarily acquiring Pandora products, directly or indirectly, through a Pandora Dealer. *Id.*, Ex. 1 ¶ 23. Because all Pandora Dealers have agreed to the Pandora Contracts, one or more Dealers have *ipso facto* breached their Pandora Contracts by supplying Walmart. *Id.*, Ex. 1 ¶¶ 10, 23-24. Through its own investigation, Pandora has been able to identify some Pandora Dealers who breached their contracts by supplying significant quantities of Pandora products to other Unauthorized Resellers, but not all of the breaching Dealers, and none from which Walmart was sourcing products. *Id.*, Ex. 1 ¶¶ 27-29.

Having exhausted its other options for discovering the identities of the breaching Pandora Dealers supplying products to Walmart, Pandora filed a John Doe lawsuit in the U.S. District Court of the District of Maryland ("Maryland Court") at Case No. 1:21-cv-02973-SAG against unknown parties who are diverting Pandora products in violation of their contracts with Pandora ("John Doe Lawsuit"). Motley Decl. at ¶ 2. As part of the John Doe Lawsuit, Pandora moved the Maryland Court for permission to issue third-party subpoenas to parties involved in diverting Pandora products. *Id.* at ¶ 3.

### C. Procedural Background of Underlying John Doe Lawsuit

Specifically, in the John Doe Lawsuit, Pandora has twice moved the Maryland Court to allow it to issue third-party subpoenas to parties involved in diverting Pandora products, first Walmart and then Respondents. *See* Motley Decl. at ¶ 3, Ex. 2 (Pandora's motions and proposed subpoenas). The Maryland Court granted Pandora's motions. *See id.* at ¶ 4, Ex. 3 (Court orders). In response to the first subpoena, Walmart identified Respondents as its suppliers. *Id.* at ¶ 5. Like Walmart, Respondents are not Pandora Dealers and therefore are not John Doe Defendants, but likely acquired their products from a Pandora Dealer or Dealers that would be John Doe Defendants. *Id.* at ¶ 6. Therefore, Pandora moved the Maryland Court for permission to subpoena Respondents for their suppliers and then served a subpoena on each of Respondents, which contained identical requests (the "Subpoenas"). *See id* at ¶ 7, Ex. 4 (Pandora's Subpoenas to Blue Time and Solar Time); No. 1:21-cv-02973-SAG at Docs. 10-11.

The Subpoenas include two requests, one for the contact information for Respondents' suppliers and the other for records and other documents related to Respondents' purchases. Motley Decl. at ¶ 7, Ex. 4. Both of these requests seek the same thing—determining who Respondents' suppliers of Pandora products are and whether they are the John Doe Defendants in the John Doe

Lawsuit. *Id.* Respondents objected and refused to produce any documents (the "Objections"), and each Respondent's Objections are virtually identical. *See id.* at ¶ 9, Ex. 5 (Blue Time's and Solar Time's objections and responses to Pandora's Subpoenas). Respondents' Objection Nos. 2-9 are all generally explications of the same overarching objection to both requests—that the Subpoenas are a pretext "to obtain information to prevent [Respondents'] lawful resale of genuine Pandora brand products . . . to get 'discovery' under the Federal Rules of Civil Procedure of non-party [Respondents], which ha[ve] neither a contract nor contact with Pandora [and] . . . to obtain confidential 'source' information from a non-party."[1] Motley Decl. at ¶ 9, Ex. 5, Objection Nos. 2, 7. Respondents assert that they are competitors of Pandora Dealers, and that their suppliers are "highly confidential business information, discovery of which will enable Pandora to simply terminate those sources to the detriment of consumers and [Respondents'] lawful competition." Respondents worry this will cause them "irreparable harm in lost sales and profits in a future amount." *Id.* at ¶ 9, Ex. 5, Objection No. 7.[2]

---

[1] Respondents' Objection No. 1 regarding the place of production has been resolved. Motley Decl. at ¶ 10. To cure Respondents' Objection No. 1, Pandora served amended subpoenas to Respondents' counsel on April 26, 2022 changing only the place of production. *See id.* at ¶ 7, Ex. 4. Via email, Respondents' counsel thereafter agreed that the amended subpoenas resolved the place of production objection. *Id.* at ¶ 10, Ex. 6 (April 27, 2022 email communication with counsel for Respondents).

[2] Respondents' Objection Nos. 4-7 assert that the First Sale Doctrine unconditionally permits the resale of trademarked products and that "no contract or 'authorization' is required for a merchant to purchase and resell genuine branded product after it is first sold by the brand owner into to [sic] the stream of commerce." Motley Decl. at ¶ 9, Ex. 5. This is oversimplified, incorrect, and irrelevant. Pandora served the Subpoenas in the context of the John Doe Lawsuit seeking the identities of the Pandora Dealer(s) selling products bearing Pandora's trademarks to unauthorized resellers **in breach of their contracts with Pandora**. Pandora did not, and does not intend to, name Respondents or any other Unauthorized Resellers as defendants in the John Doe Lawsuit. The illegality of Respondents' resale of Pandora products is not at issue in the John Doe Lawsuit. Additionally, although not necessary to the resolution of this motion, it is notable that Respondents' explanation of the First Sale Doctrine is wrong. There is no blanket permission, as Respondents seem to assert, for anyone to sell trademarked products as long as they were first sold by the trademark owner. Rather, the First Sale Doctrine **prohibits** the resale of trademarked products by unauthorized sellers that are materially different from genuine trademarked products or that are outside of and interfere with the trademark owner's quality controls and customer service requirements. There is ample authority on these exceptions to the First Sale Doctrine. *See, e.g.*, *Zino Davidoff SA v. CVS Corp.*, 571 F.3d 238, 243-44 (2d Cir. 2009); *Abbott Labs v. Adelphia Supply United States*, No. 15-CV-6002, 2019 WL 5696148, *4 (E.D.N.Y. Sep. 30, 2019) ("material difference" and "quality control" tests serve as "proxies for the fundamental question under the Lanham Act: whether consumer confusion is likely"); *Skullcandy, Inc. v. Filter USA, Inc.*, No. 2:18-cv-00748-DAK, 2019 WL 2568010, *4-8 (D. Utah June 21, 2019).

Pandora attempted to negotiate an amicable resolution and protective order with Respondents over the following months, but those efforts have failed. *Id.* at ¶ 11. Pandora now moves to compel Respondents to produce the documents requested in the Subpoenas so that Pandora can name the John Doe Defendants and proceed with the Maryland action.

## III. LAW AND ARGUMENT

### A. Standard of Review

A party may seek discovery from a non-party under Fed. R. Civ. P. 45, and motions to compel compliance with subpoenas under Rule 45 are governed by the same relevancy and proportionality standards in Fed. R. Civ. P. 26. *Joint Stock Co. Channel One Russ. Worldwide v. Infomire LLC*, No. 16-CV-1318 (GBD) (BCM), 2018 WL 6712769, *5 (S.D.N.Y. Nov. 30, 2018); *Delta Air Lines, Inc. v. Lightstone Grp., LLC*, No. 21-MC-374 (RA) (OTW), 2021 WL 2117247, *2 (S.D.N.Y. May 24, 2021). Under the Federal Rules, parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance is broadly construed to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *United States CFTC v. Parnon Energy, Inc.*, 593 Fed. Appx. 32, 36 (2d Cir. 2014); *Coty Inc. v. C Lenu, Inc.*, No. 10-21812-CIV-HUCK/O'SULLIVAN, 2010 WL 5392887, *4 (S.D. Fla. Dec. 22, 2010). The purpose of this broad construction is to ensure that all relevant information is disclosed "so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts and, therefore, embody a fair and just result." *Coty*, 2010 WL 5392887, at *7.

Courts can limit such discovery under Rule 26 if it is "unreasonably cumulative or duplicative," can be obtained from another source, or is outside the scope of permissible discovery.

Courts can limit discovery under Rule 45 if it requires the disclosure of confidential research, development, or commercial information, or trade secrets. Fed. R. Civ. P. 26(b)(2)(C); 45(d)(3)(B)(i). A non-party resisting discovery must establish that the information sought is confidential and that disclosure would be harmful to it. *Am. Home Assur. Co. v. Merck & Co.*, No. 03 Civ. 3850 (VM) (JCF), 2004 WL 2222148, *2 (S.D.N.Y. Oct. 4, 2004); *Coty*, 2010 WL 5392887, at *3; *Bare Escentuals Beauty, Inc. v. Costco Wholesale Corp.*, No. 07CV90, 2007 WL 4357672, *2-3 (S.D. Cal. Dec. 11, 2007). Only if the non-party can establish both of these prongs does the party seeking disclosure have to show that the discovery is relevant to the pending action and necessary to its prosecution. *Coty*, 2010 WL 5392887, at *7 (holding that "the Court should not consider relevancy and necessity if the entity resisting discovery has failed to carry out its initial burden of showing both confidentiality and harm," and compelling disclosure of unauthorized seller's supplier information). Here, the requested information is not highly confidential, pretextual, or harmful and it is relevant and necessary to Pandora's ability to prosecute its John Doe Lawsuit.

### B. The Discovery Sought Is Not Unduly Burdensome or Harmful to Respondents.

A party resisting disclosure of information in response to a subpoena carries the threshold burden of showing that disclosure would be unduly burdensome and harmful to it. *Coty*, 2010 WL 5392887, at *3; *Am. Home*, 2004 WL 2222148, at *2. Despite their unsupported objections, Respondents cannot show that the disclosure of its suppliers would be unduly burdensome. Respondents' purported basis for their Objections is that the discovery sought is a pretext for obtaining source information from Respondents so that Pandora can terminate those sources and prevent "discounters" from reselling Pandora products. *See* Motley Decl. at ¶ 9, Ex. 5, Objection Nos. 2, 7. But Respondents' unadorned "pretext" argument is not a recognized basis for refusing

7

to respond to a subpoena, and even if it were, there is ample evidence in Pandora's complaint in the John Doe Lawsuit refuting Respondents' "pretext" arguments. *See Delta,* 2021 WL 2117247, at *2 (identifying relevance, undue burden, cumulative or duplicative nature of information, and availability of information from other sources as bases for objecting to Rule 45 subpoena); *Joint Stock Co.,* 2018 WL 6712769, at *5 (identifying time for compliance, place of compliance, privilege, undue burden, and timeliness as bases for objecting to Rule 45 subpoena); *Corporate Express Office Prods. v. Gamache (In re Wagar)*, No. 1:06-MC-127 (LEK/RFT), 2006 WL 3699544, *4-5 (N.D.N.Y. Dec. 13, 2006) (identifying relevance, undue burden, and privilege as bases for objecting to Rule 45 subpoena). Moreover, Respondents do not explain how this is an undue burden; instead they claim it is pretextual and asked of a third party. *See Taylor Precision Prods. v. Larimer Grp., Inc.*, No. 15-CV-4428 (ALC) (KNF), 2017 WL 10221320, *5-6 (S.D.N.Y. Feb. 27, 2017) (rejecting conclusory undue burden objection where it failed to demonstrate with specificity how the request was unduly burdensome).

The Subpoenas are not a "pretext" to allow Pandora to cut off Respondents' sources of Pandora products; they are legitimate requests for information that is highly relevant, necessary, and uniquely in Respondents' possession, and that will allow Pandora to name the John Doe Defendants in its John Doe Lawsuit and prosecute its breach of contract claims. Pandora has fully alleged breach of contract claims against unknown breaching Pandora Dealers, and Pandora is entitled to enforce the terms of those contracts. The purpose of the Pandora Contracts is to protect the quality of its products—not to discriminate against "discounters"—and they do so by limiting who may sell Pandora products so that Pandora can monitor sellers and require them to follow Pandora's quality control and customer service requirements. Respondents' speculation about any

other purpose of the Contracts is irrelevant, and whether **Respondents** agree that the Pandora Contracts are valid or enforceable is of no import.

Likewise, Respondents cannot show that the disclosure of their supplier records to Pandora would be harmful. Pandora and its Dealers are not Respondents' competitors and are not seeking to poach Respondents' suppliers, two commonly asserted bases to avoid production of supplier information. Rather, Respondents' suppliers are Pandora's own contractual counterparties and Pandora seeks their identities only to assert its own contractual rights. Courts have held that disclosure is not harmful in such circumstances.

For example, in *Roche Diagnostics Corp. v. Amexpo Int'l, LLC*, No. 19-61469-CIV-RUIZ/SELTZER, 2019 WL 11623935, *1-3 (S.D. Fla. Aug. 20, 2019), the plaintiff (Roche) brought litigation over a product diversion scheme where unauthorized sellers purchased Roche's international and mail-order products that were not authorized for retail sale and represented them as retail-authorized products. Roche served a subpoena on two unauthorized sellers participating in the product diversion scheme, seeking their suppliers. The sellers objected, raising many of the same arguments as Respondents, including "fears 'that Roche will contact, subpoena, harass and sue its suppliers.'" *Id.* at *3. The court granted Roche's motion to compel, holding that Roche "is entitled to trace the source of the secondary sales" and that the sellers' "argument that the identities of the companies that sell Roche's own product is a trade secret vis-à-vis Roche is not persuasive" because "[t]his is not a case of a competitor acquiring an opponent's 'playbook.'" *Id.* at *5.

In *Coty*, another case in which a manufacturer sought to subpoena an unauthorized seller's supplier records to uncover a product diversion scheme, the court reached the same conclusion and held that the plaintiffs and the subpoenaed party were not competitors and "the disclosure of [the non-party]'s suppliers and customers to the plaintiffs would be less harmful than the disclosure of

9

this information to a competitor." *Coty*, 2010 WL 5392887, at *4. The court specifically rejected the non-party's suggestion that disclosure of the suppliers would harm it because the suppliers would cease doing business with the non-party if their identities were disclosed. The court found these were "unsupported assumptions regarding the future conduct of its suppliers" and were "speculative and insufficient" to establish harm. *Id.* at *4.

Just like the non-party in *Coty*, Respondents argue in their Objections that their suppliers may stop doing business with Respondents. Motley Decl. at ¶ 9, Ex. 5, Objection Nos. 4, 7. In other words, Respondents' purported "harm" is that they will no longer be able to profit from the Pandora Dealers' breaches. This is speculative and incognizable harm, and was rejected by the court in *Roche*. *See* 2019 WL 11623935, at *5 ("Although legitimate secondary-market suppliers to Respondents may be inconvenienced by subpoenas, that inconvenience is the same inconvenience incident to all civil litigation."). In the John Doe litigation, Pandora seeks only to enforce its contractual rights. The "harm" asserted by Respondents—that they will not be able to benefit from unlawful conduct—is not legitimate or the type of harm that is protected by the Federal Rules. *See Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (finding defendant "faces no hardship in refraining from" illegal conduct); *Advance Magazine Publrs., Inc. v. Tinsley*, No. 3:18-cv-13575-RHC-SDD, 2019 WL 1285089, *4 (E.D. Mich. March 20, 2019) (same); *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 640 (N.D. Ill. 2016) (finding no harm to unauthorized resellers where they "have no legitimate interest in illicitly trafficking" products and "the monetary benefits that Defendants receive from their actions are not benefits to be protected from injury . . . Defendants should not consider it a burden to follow the law"); *Pearson Educ., Inc. v. Labos*, No. 19 Civ. 487 (JPC), 2021 WL 4507530, *6 (S.D.N.Y. Sept. 30, 2021) (finding defendants had "no

10

legally legitimate interest in continuing to infringe"). Thus, Respondents have not demonstrated that responding to the Subpoenas would be unduly burdensome or harmful.

## C. The Discovery Sought Is Not Highly Confidential.

Respondents also have not demonstrated that the Subpoenas seek highly confidential information. Respondents assert that they are competitors of Pandora Dealers, and that their sources are "highly confidential business information, discovery of which will enable Pandora to simply terminate those sources to the detriment of consumers and [Respondents'] lawful competition." Motley Decl. at ¶ 9, Ex. 5, Objection No. 7.

Under similar facts, courts have rejected the idea that supplier information is inherently confidential, especially when—as here—there is no proof the subpoenaed party owes an obligation of confidentiality to the suppliers. For instance, in *Generation Brands, LLC v. Décor Selections, LLC*, No. 19 C 6185, 2020 WL 6118558, *2 (N.D. Ill. Oct. 16, 2020), the court held that there is "nothing inherently confidential or secret about the name of a lighting fixture supplier. Harry Lime is not distributing lamps under the cover of darkness in the rubble of post-war Central Europe to the accompaniment of a zither." The party's unsupported claim of confidentiality carried no weight—"saying so doesn't make it so." *Id.* When weighed against the plaintiffs' need for the information to prove its claims, the court ordered the disclosure of the supplier information and rejected the party's request that it be designated "Attorneys' Eyes Only." *Id.*; *see also Roche*, 2019 WL 11623935, *4 (explaining that there is no absolute privilege from disclosure of trade secrets or similar confidential information).

Likewise, here there is nothing inherently confidential about Respondents' supplier information and Respondents have made no effort to show that they have ever treated their suppliers' information as confidential or shown any duty of confidentiality to the suppliers. As in

11

*Generation Brands*, Respondents do not claim they have confidentiality agreements with their suppliers or assert any other reason the suppliers would expect to remain confidential. *See* 2020 WL 6118558, at *2 (rejecting claim of confidentiality where, "despite the seeming importance of the claimed secrecy agreement," party had no proof of ever treating its supplier information as confidential). Rather, Respondents flatly claim that the supplier information is confidential simply because disclosure would be harmful to Respondents and to competition. This is circular reasoning and conflates Respondents' two burdens to demonstrate that the requested information is confidential ***and*** that disclosure of it would be harmful.

Although Pandora maintains that Respondents' supplier information is not highly confidential, in an attempt to resolve this dispute and obtain the information needed to pursue its John Doe Lawsuit, Pandora has offered to treat the discovery sought as confidential even though it is Pandora's position that the "confidentiality is minimal." *Coty*, 2010 WL 5392887, at *3. To the extent that confidentiality concerns are implicated, Pandora is willing to negotiate and agree to a protective order preventing the disclosure of information in the subpoenas to third parties other than Pandora itself and its counsel, and agreeing to use the information only for purposes of pursuing its John Doe Lawsuit. Courts routinely balance a party's need for requested information with the producing party's desire to keep it confidential by entering a protective order permitting the information to be designated "Confidential." *See, e.g.*, *Bare Escentuals*, 2007 WL 4357672, at *4 (S.D. Cal. Dec. 11, 2007) (ordering disclosure of supplier identity with "Confidential" designation); *Coty*, 2010 WL 5392887, at *7-8 (same); *Pendleton Woolen Mills v. Kraff's Men's Wear Co.*, No. 3:14-CV-628-PK, 2014 WL 7777762, *9-10 (D. Or. Nov. 21, 2014) (same); *Generation Brands, LLC*, 2020 WL 6118558, at *2 (finding AEO designation unworkable because it would not permit party to take lawful action against its authorized sellers).

## D. The Discovery Sought Is Relevant and Necessary to the John Doe Lawsuit.

Because Respondents have not demonstrated that the Subpoenas are unduly burdensome or harmful or that they seek highly confidential information, Respondents must respond to the Subpoenas. But even if Respondents had met their threshold burdens of proof, the obvious relevance of and Pandora's overwhelming need for the requested information outweighs any minimal or speculative harm. *See Coty*, 2010 WL 5392887, at *7 (courts need not consider whether the information is relevant and necessary unless the objecting party has *first* shown undue burden and harm).

Here, Pandora seeks the identities of the John Doe Defendants who breached their contracts with Pandora by diverting Pandora products to Respondents. Without knowing the identities of the John Doe Defendants, Pandora has no way of prosecuting its John Doe Lawsuit. Courts routinely allow third-party subpoenas to discover the identities of John Doe Defendants where that discovery is required to prosecute the lawsuit. *See Arista Records LLC v. Doe*, 604 F.3d 110, 115 (2d Cir. 2009) (permitting third-party subpoena where request was reasonable in scope, identification of alleged infringers was indispensable for vindication of plaintiffs' rights, and information was unavailable through alternative means); *Malibu Media, LLC v. Doe*, No. 14-60259-CIV-ROSENBAUM, 2014 WL 1340779, *1 (S.D. Fla. Apr. 4, 2014) ("A case against a single defendant cannot proceed if that defendant is unidentified. Therefore, courts routinely find good cause to serve a third-party subpoena on an Internet Service Provider so that a plaintiff may discover the identity of a John Doe defendant . . . ."); *LaFace Records, LLC v. Does 1-5*, No. 07-187, 2007 WL 2867351, *1 (W.D. Mich. Sept. 27, 2007) (collecting cases).

Courts have also recognized that subpoenas are a proper method to determine the identity of Unauthorized Resellers' suppliers specifically. *See, e.g.*, *Roche*, 2019 WL 11623935, at *4

("Roche is entitled to trace the source of the secondary sales."); *Coty*, 2010 WL 5392887, at *5 ("The Court is persuaded by the plaintiffs' argument that the disclosure of MPJ's suppliers would allow the plaintiffs to trace the source of the decoded products and thus could lead to evidence that the decoded products would likely deceive, cause confusion or result in mistake."); *Minnesota Mining and Mfg. Co. v. Graham-Field, Inc.*, No. 96 Civ. 3839, 1997 WL 83292, *1 (S.D.N.Y. Feb. 26, 1997) (refusing to quash non-party subpoena seeking to discover product sources of unauthorized distributor because "the discovery would assist generally in disclosing the identity of potential John Doe defendants").

Although Respondents attempt to paint the Subpoenas as Pandora's "wish[ ] to discourage its authorized distributors, and others, from selling" Pandora products to unauthorized resellers, this is a mischaracterization of the John Doe Lawsuit. *See* Motley Decl. at ¶ 9, Ex. 5, Objection No. 8. Contrary to Respondents' assertion, the First Sale Doctrine does not prohibit disclosure of supplier information, especially in a case like this where the First Sale Doctrine is not at issue and the purpose of the underlying lawsuit is a breach of contract claim against Pandora Dealers. The John Doe Lawsuit seeks to enforce Pandora's contractual rights against Pandora Dealers— ostensibly Respondents' suppliers—who have breached their contracts with Pandora and prevented Pandora from being able to ensure the quality of its products. The Pandora Contracts include robust policies with numerous quality control measures regulating the sale of all Pandora products on all platforms by all types of authorized sellers. Motley Decl. at ¶ 2, Ex. 1 ¶¶ 10-14, 22, 32-36. The purpose of the Pandora Contracts is to ensure that all sellers of Pandora products follow certain quality control and customer service requirements and, in turn, that consumers receive high-quality Pandora products. When Pandora Dealers breach these contracts and sell Pandora products to Unauthorized Resellers, Pandora can no longer control the quality of the

products and these breaches harm the integrity of Pandora's authorized retailer network and its brand. Regardless of Respondents' own opinions on the enforceability of the Contracts, Pandora's complaint in the John Doe Lawsuit more than sufficiently alleges the basis for its breach of contract claim and the need for information about Respondents' suppliers to prosecute its claims. *See id.*

Finally, Pandora's subpoenas are relevant and necessary because Pandora has no other method of obtaining the identities of the John Doe Defendants. Pandora has engaged in extensive investigation to reveal the identity of the Pandora Dealers supplying products to Walmart (through Respondents), including searching open source and subscription services, performing test purchases, and issuing a subpoena to Walmart in the John Doe Lawsuit. *See* Motley Decl. at ¶ 2, Ex. 1 ¶¶ 27-28. However, these options have not revealed the identities of the John Doe Defendants, and Pandora now has no other options for identifying them aside from the current subpoenas.

In short, the relevance and need for the subpoenaed information far outweigh the minimal confidentiality and speculative harm asserted by Respondents. The Pandora Contracts are in place to prevent precisely the kind of unfettered resale activity at issue in the John Doe Lawsuit. Information about Respondents' suppliers is at the crux of the John Doe Lawsuit, and without it Pandora cannot prosecute the John Doe Lawsuit or enforce its own contracts. Respondents should be compelled to produce the requested information.

IV. **CONCLUSION**

Pandora has sued John Doe Defendants in Maryland and the U.S. District Court for the District of Maryland has approved the issuance of a subpoena to Respondents to discover the identity of those John Does. Because the identity of those John Does is essential to Pandora's

lawsuit and their disclosure will cause no extraordinary harm to Respondents, Pandora's motion to compel should be granted.

Date: August 25, 2022

Respectfully submitted,

**MINTZ & GOLD LLP**

*/s/ Terence W. McCormick*

Terence W. McCormick
Barry M. Kazan
600 Third Avenue
25th Floor
New York, NY 10016
Telephone: (212) 696-4848
Email: mccormick@mintzandgold.com
kazan@mintzandgold.com

*Attorneys for Movant Pandora Jewelry, LLC*

Of Counsel:

Martha Brewer Motley (OH Bar No. 0083788)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, OH 43215
Telephone: (614) 464-6360
Email: mbmotley@vorys.com

Emma K. Morehart (OH Bar No. 0098085)
Vorys, Sater, Seymour and Pease LLP
301 East Fourth Street, Suite 3500
Cincinnati, OH 45202
Telephone: (513) 723-4036
Email: ekmorehart@vorys.com

*Pro Hac Vice applications forthcoming*